```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 07-14050-CIV-GRAHAM
                                    MAGISTRATE JUDGE P. A. WHITE
DARYL UNDERWOOD,                :

        Plaintiff,              :

v.                              :       REPORT OF
                                        MAGISTRATE JUDGE
MARTIN COUNTY SHERIFF'S         :
OFFICE, et al.,
                                :
        Defendants.
```

Plaintiff Daryl Underwood, who is now a state prisoner at Washington C.I., filed a pro se civil rights complaint and amendment (DE#s 1, 4) for damages pursuant to 42 U.S.C. §1983, concerning events at the Martin County Jail ("MCJ") where he was previously confined. After a Preliminary Report and Order of partial dismissal (DE#s 8, 14), the case remained pending solely against Martin County Deputy Sheriffs David Sansone and John Keating on claims that they subjected Underwood to the use of excessive force at the MCJ on December 20, 2006. The incident during which force was used resulted in state criminal charges being lodged against Underwood in Martin County Case No. 06-1870, for Battery on a Law Enforcement Officer [Ct. 1] and Resisting with Violence [Ct. 2].

**This Cause is before the Court upon a joint Motion for Summary Judgment by Sansone and Keating (DE# 32)**, with exhibits (DE#s 32-2 to 32-11)**,** as to which Underwood was advised of his right to respond.[1]  Underwood has filed a Response (DE# 40) with exhibits.

---

[1]     Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

In pertinent part, the defendants' exhibits include transcripts of testimony from case 06-1870, by plaintiff Underwood (T/97-121, at DE#32-3 pp. 2-26), defendant Deputy Keating (T/178-206, at DE# 32-4 pp. 23-51), defendant Sansone (T/214-229, at

---

burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), Orders of Instruction (DE#s 33 and 34) were entered, informing plaintiff Underwood, as a *pro se* litigant, of his right to respond to the defendants' motion for summary judgment. The Order specifically instructed plaintiff Underwood regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

DE#32-5 pp. 7-22), Control Room Deputy Barry Holland (T/206-214, at DE#32-4 pp. 51-52 and DE#32-5 pp. 1-7), and inmate Michael Pearson (T/229-242, at DE#32-5 pp. 22-35). Defendants' exhibits also include the Information in Case 06-1870 [432006CF1870] (DE# 32-2); and Jury Instructions, and the Judgment and Sentence in that case (DE#s 32-10 and 32-11, respectively).

With his Response opposing defendants' summary judgment motion Underwood has submitted his own sworn statement (DE#40 at pp. 4-9).

## **DISCUSSION**

The events which led to use of force by the defendants began with Underwood's transfer from Cell 12 to Cell 8 on his unit. He was concerned that the new cell was uncleanly, and that some inmates on the unit had active Staph infections. He complained to Sansone that Cell 8 had not been cleaned.

Underwood asserts that he asked to be given cleaning supplies, and contends that he was ignored for hours. It is undisputed that Underwood, who had become frustrated, repeatedly pounded or kicked his cell door, and yelled in an attempt to get the attention of staff. The defendants state that Underwood was told that more urgent matters required staff's immediate attention, and that he would have to wait for his concerns to be addressed.[2] They also contend that Underwood was repeatedly told to stop his disruptive behavior, but did not do so. Ultimately, a decision was made to move Underwood from Cell 8; and Sansone went to Underwood's cell and ordered that he allow himself to be handcuffed by placing his arms through the hatch in the cell door. He refused, and ignored repeated instructions to comply. Then Keating came to the cell; the control room officer was told to open the door; and Sansone and Keating entered the cell. Underwood was told that he was being moved to another cell. Underwood says that he insisted he did not

---

[2] At trial, Keating testified that one emergency was that an inmate had stuck his finger through an opening in a locker and got it stuck, and EMS had had to respond. The other was an attempt by an inmate to commit suicide by hanging.

want to move, and only wanted to be given cleaning supplies. He also says that he did not want to be touched.

At that point, use of force began. Sansone's and Keating's testimony indicates that Underwood resisted orders to put his arms behind his back for cuffing. Sansone therefore grasped Underwood's left wrist and applied one hasp of a pair of handcuffs to it. While Sansone maintained control of the left wrist, Keating tried to control Underwood's right wrist. It is the defendants' contention, as supported by their trial testimony, that Underwood pulled his right wrist away from Keating and struck at Keating with his right fist. He did not make "full contact," and instead grazed the left side of Keating's head/neck, inflicting a scratch on his ear and neck. Keating testified that he did not give Underwood permission to strike him. [It is Underwood's contention in his pleadings, and trial testimony, that Keating's injury resulted from his walking into or hitting his head/neck on a locker hatch, after which Keating allegedly said to him, "You Bastard."]. Inmate Pearson testified that he had seen Underwood swinging his arms, as if to push Deputy Sansone away, and saw a "swing push" by him toward Sansone, but he did not see if it made contact. Pearson gave no testimony stating that he saw Underwood swing at or strike Keating.

As noted <u>supra</u>, in Case 06-1870, Underwood was tried to a jury. He was convicted and sentenced on August 17, 2007, for committing Battery on a Law Enforcement Officer [Keating] and Resisting an Officer [Keating and/or Sansone] With Violence. (<u>See</u> Judgment & Sentence, DE# 32-11).

There is evidence of only one striking of Keating by Underwood. Clearly the jury believed the officers' testimony that Underwood had struck Keating in the area of his head, because at trial he was convicted on Count 1 [Battery on a LEO] (DE#32-11). On that Count, the Information specifically charged that on "December 20, 2006, Daryl Leslie Underwood did intentionally touch or strike John Keating against that person's will or did intentionally cause bodily harm to said person...who was engaged in the lawful performance of a legal duty..." (DE# 32-2). The Court's jury instruc-

4

tion was that in order to convict Underwood of Battery on a LEO the State was required to prove that Underwood intentionally touched or struck Keating against his will, or caused him bodily harm; that Keating was a law enforcement officer, and that Underwood knew it; and that at the time that the battery was committed Keating was engaged in the lawful performance of his duties (DE#32-10).

It is less clear, however, upon what evidence/event(s) the jury convicted Underwood on Count 2 [Resisting with Violence]. The Information charged that on "December 20, 2006 Daryl Leslie Underwood did knowingly and wilfully resist, obstruct or oppose John Keating and/or Steve Sansone, a duly authorized law enforcement officer in the lawful execution of the officer's legal duty, by offering or doing violence to the person of said officer..." (DE#32-2). The Jury Instruction required that the State prove that Underwood "knowingly and willfully resisted, or obstructed or opposed John Keating and David Sansone by offering to do them violence or doing violence to them;" that "[a]t the time John Keating and David Sansone were engaged in the lawful execution of a legal duty;" that "[a]t the time [Keating and Sansone] were officers;" that a "deputy sheriff or corrections officer with the Martin County Sheriff's Office is a law enforcement officer;" and that "maintaining security, control and order in the jail constitutes lawful execution of a legal duty." (DE#32-10).

It is after the striking of Keating that the remainder of the Deputies' uses of force about which Underwood complains took place.

It is the defendants' contention [as testified to by them and Control Room Officer Holland] that before he struck Keating Underwood had been flailing his arms and attempting to back up. This had given Sansone concern that the cuff, which was attached to only Underwood's left wrist, could possibly cause injury or be used as a weapon. The officers therefore strove to control both of Underwood's wrists before he inflicted the glancing blow with his right hand to Keating. Sansone testified when grabbing Underwood's left wrist he squeezed the cuff tighter to make sure that it would not come off, and then held onto it with his left hand. This was

shortly after he had initially placed the cuff on Underwood's wrist, and before Underwood was taken to the ground.

    The deputies testified that the following were their additional uses of force against Underwood. After Underwood hit Keating, Sansone sprayed him in the face with a single short burst of OC Spray. Keating testified that the OC spray "knocked him off guard" and "we were able to redirect him to the ground." Sansone testified that due to the spray Underwood "became disoriented," but that he "continued to struggle," and that "we finally did get ahold of him and force him to the floor so we could gain better control of him." The officers testified that Sansone was on Underwood's back, that Underwood's cuffed left arm was behind his back, and that his right arm was under his body. Keating testified that it took a lot of struggling and some time but they "finally did manage to pull it out from underneath him and we placed it behind his back and applied handcuffs." The deputies then "assisted him to his feet."

    In his sworn statement submitted in support of his response (DE#40 at pp. 4-9), and in his trial testimony, Underwood stated that the uses of force by the defendants were not limited to initial grabbing/twisting of his arms, spraying him with OC Spray, throwing him to the floor, and then pulling forcefully on his right arm to get it out from under his body and bring it behind his back for handcuffing. Underwood states that, before Sansone applied the pepper spray to his eyes, Sansone took the metal OC Spray canister and struck him with it on the left side of the forehead. Underwood alleges that then, after he was sprayed and thrown to the floor, he was unable to give them his right arm because it was pinned under him since Sansone was pressing down on his body. In his sworn statement, Underwood says that both Sansone and Keating repeatedly punched him along his back, down to his legs. Underwood further states that Sansone, at the time of picking him up from the floor [having earlier tightened the left cuff when initially placing it on his wrist] "squeezed the cuff to my left wrist until it cut through the skin that caused nervs damage and as of today I cannot feel my left hand." He also states that Underwood intentionally caused him additional pain, by putting "his right hand under and

6

through the cuffs and onto my left shoulder and lifting my arms as high as he could to continue force and causing me much pain," while saying "I know how to make you cry like a Bitch don't I." The defendants' testimony indicates that they both were present and participated in raising Underwood to his feet, and escorting him out of Cell 8.

In his sworn statement Underwood describes injuries which he sustained as a result of the alleged excessive uses of force by Sansone and Keating, as follows: "Today, I have back spinal cord problems, blurry vision, and no feeling in my left hand." (DE# 40).

It is unclear from the record what post-use-of-force medical examination, if any, was given to Underwood.[3] There are no medical documents of record filed either by plaintiff Underwood or defendants to document injuries either to Underwood or the deputies.

## ANALYSIS

It is well settled that pre-trial detainees can sue for acts of violence by prison or jail officials. See H.C. by Hewett v. Jarrad, 786 F.2d 1080 (11 Cir. 1986); Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.), cert. denied, 414 U.S. 1033 (1973); Telfair v. Gilberg, 868 F.Supp. 1396 (S.D.Ga. 1994). A civil rights claim for excessive force against a pretrial detainee arises under the Due Process Clause of the Fourteenth Amendment, instead of the Eighth Amendment prohibition against cruel and unusual punishment because pretrial detention is not punishment. See Bell v. Wolfish, 411 U.S.

---

[3] Sansone testified at trial that after he was cuffed and on his feet, Underwood first passively resisted being removed from the cell. But they guided him out, he began to walk; and he was not taken to the medical department, but instead was taken to booking for decontamination [removal of OC spray] where he was seen by a nurse. [In his unsworn "Incident Report" (DE#32-7), Sansone specifically stated that Underwood was taken to medical, where he was instructed to place Underwood in a restraint chair. Underwood sat in the chair without resistence, and because decontamination cloths were not available, it was decided that Underwood should be wheeled to confinement, still strapped to the restraint chair. There, he agreed not to resist, and was released from the chair so that he could shower]. It was Keating's testimony that after they had cuffed Underwood "we lifted him to his feet...and escorted him down to medical." When asked if that "was for treatment of the pepper spray," Keating responded, "Yes."

520, 535 (1979) (holding that the Due Process Clause permits government to incarcerate pretrial detainees, but not to impose punitive conditions on them); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11 Cir. 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11 Cir. 1985); H.C. by Hewett v. Jarrad, supra.  In 2005, in its opinion in Bozeman v. Orum, 422 F.3d 1265 (11 Cir. 2005), the Eleventh Circuit made clear that such a claim -- involving the mistreatment of pretrial detainees -- is analyzed utilizing the same excessive force standard which was enunciated by the Second Circuit in Johnson v. Glick, supra at 1033, and later adopted by this Circuit in Williams v. Kelley, 624 F.2d 695, 697-98 (5 Cir. 1980), and applied thereafter by the Eleventh Circuit in the Eighth Amendment context in Campbell v. Sikes, 169, 1353, 1374-77 (11 Cir. 1999). Bozeman v. Orum, supra, 422 F.3d at 1271 and n.10.

Under the Eighth Amendment, force may be employed in a custodial setting as long as it is not done "maliciously and sadistically to cause harm," but applied in a good faith effort to maintain or restore discipline. Bozeman, supra, at 1271, quoting Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986) (quotations omitted). The factors relevant to the determination of whether the force was used maliciously and sadistically with the purpose of causing harm include: 1)  the extent  of the injury inflicted; 2) the need for force; 3) the relationship between the need for force and the amount  of  force  used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell v. Sikes, 169  F.3d 1353, 1375 (11 Cir. 1999);  Redd v. Conway, 160 Fed.Appx. 858, 860 (11 Cir. 2005), citing Carr v. Tatangelo, 338 F.3d 1259, 1271 (11 Cir. 2003).

Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace, in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or

locked in his cell when the chemical agent is used. See <u>Williams v. Benjamin</u>, 77 F.3d 756, 762-63 (4 Cir. 1996); <u>Soto v. Dickey</u>, 744 F.2d 1260, 1270-71 (7 Cir. 1984); <u>Spain v. Procunier</u>, 600 F.2d 189, 195 (9 Cir. 1979); <u>Williams v. Scott</u>, No. 96-2184, 1997 WL 312273, at *1 (7 Cir., June 5, 1997); <u>Barr v. Williamsburg Co. Sheriff's Dept.</u>, No. C/A2:02-0167-22AJ, 2002 WL 32333152, at *4-5 (D.S.C., Dec. 27, 2002).

### **Defendants' Asserted Grounds for Relief**

In this case, in their motion for summary judgment, the defendants Sansone and Keating argue that due to his convictions in Case 06-01870, Underwood's §1983 excessive force claims against them are barred under the doctrine of <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) (holding that if a judgment in favor of a state prisoner seeking damages in a §1983 suit would necessarily imply the invalidity of his or her conviction or sentence, the claim for damages is not cognizable under §1983 and the complaint must be dismissed, because the claim for damages will not exist unless and until the prisoner can demonstrate that the conviction or sentence has previously been reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus).[4] Alternatively, the

---

[4] In <u>Heck</u>, the Supreme Court explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.
>
> 512 U.S. at 486-87.

defendants Sansone and Keating argue that they are entitled to qualified immunity.

### 1. **Defendants' Argument that Plaintiff's §1983 Claims Are Barred Under Heck v. Humphrey**

In this case if there were a judgment in plaintiff Underwood's favor on his §1983 claims of excessive force, it would not necessarily undermine his convictions and sentences in case 06-1870 for Assault and Resisting. This is possible for the following reasons. Underwood could be guilty of assault [by striking Keating], and resisting [e.g., by violently swinging his arms as the defendant deputies initially approached, and/or pulling away as they tried to control his wrists]; and certain uses of force such as application of OC Spray, taking plaintiff to the floor so he could be controlled, and pulling on his arms to force them behind his back so he could be handcuffed could be deemed reasonable actions by an officer engaged in the lawful performance of a legal duty. Yet -- without necessarily negating any element of either of the two underlying offenses and convictions -- other uses of force alleged to have been applied by the defendants could be found excessive [including, e.g., the alleged striking of Underwood in the temple with a metal OC Spray cannister; repeatedly beating him about the back and legs while he was on his stomach; intentionally over-tightening handcuffs [after they already had been secured] to the point that they broke the skin and caused permanent numbness; and the alleged maneuver by an officer of placing his arm under the handcuffs and his hand on top of the plaintiff's shoulder, and then using a lever action to wrench plaintiff's cuffed arms as high as possible in order to intentionally cause pain]. See Heck, supra (when "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit"). See also Dyer v. Lee, 488 F.3d 876, 879-80 (11 Cir. 2007) (holding that "as long as it is possible that a §1983 suit would not negate the underlying

conviction, then the suit is not <u>Heck</u>-barred;" and in reaching that finding, noting that under a first example contemplated in <u>Heck</u> a successful §1983 action could not stand as a matter of law -- if it would necessarily negate one of the elements of the underlying offense and the conviction; while under a second example contemplated in <u>Heck</u>, even following a successful §1983 suit, there would still exist a construction of the facts that would allow the underlying conviction to stand); <u>Wells v. Cramer</u>, 158 Fed.Appx. 203, 2005 WL 3196630, at *2 (11 Cir., Nov. 30 2005) (holding that a plaintiff may prevail on a claim for excessive force without necessarily implying the invalidity of the underlying conviction for the offense giving rise to the excessive force –- and observing that to the extent Well's complaint alleged excessive use of force after he was arrested, restrained, and posed no threat to the defendant officers, his §1983 action, if successful, would not necessarily imply the invalidity of his underlying convictions and is not Heck-barred); <u>Vinyard v. Wilson</u>, 311 F.3d 1340 (11 Cir. 2002) (defendant who pleaded guilty to offenses for which she was arrested nonetheless avoided summary judgment on claim of excessive force in effecting the arrest).

Thus, the defendants are not entitled to a dismissal of plaintiff's §1983 action based on an application of <u>Heck</u>.

### 2. **<u>Defendants' Claim of Entitlement to Qualified Immunity</u>**

On the defendants' alternative ground for relief, it appears that for some of the alleged uses of force it can be said that they are entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11 Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11 Cir. 1996). It apparent, however,

that for other alleged uses of force it cannot be said that the defendants are entitled to such immunity.[5]

The Courts have held that use of an appropriate degree of force by a prison guard to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11 Cir.1987). In this case, after plaintiff Underwood's refusal of verbal orders to submit to handcuffing, his initial resistance of the placement of cuffs, and a striking of Deputy Keating, the defendants were clearly entitled to use appropriate kinds and amounts of force in order to restrain and control the plaintiff. This included the use of a chemical agent in a limited amount (a single burst) to control the plaintiff who was reacting violently, and refusing verbal

---

[5] Qualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions "violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); Wilson v. Blankenship, 163 F.3d 1284, 1288 (11 Cir. 1998); McMillian v. Johnson, 88 F.3d 1554, 1562, amended on other grounds, 101 F.3d 1363 (11 Cir. 1996).

The Eleventh Circuit applies a two-part test to determine if the qualified immunity defense protects a defendant government official. See Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir.1997).

First, the "defendant government official must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." Evans, supra; Foy v. Holston, 94 F.3d 1528, 1532 (11 Cir. 1996). Second, if the defendant official meets his burden, then the plaintiff must "demonstrate that the defendant violated clearly established law based upon objective standards." Evans, supra at 1320; Foy, supra at 1532. General propositions and abstractions do not qualify for bright line, clearly established law. See Lassiter, 28 F.3d at 1150. If qualified immunity is to be denied, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Lassiter, supra, 28 F.3d at 1150.

The usual rule is that qualified immunity protects government actors, and "only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Foy, supra, 94 F.3d at 1532 (quoting Lassiter, supra, 28 F.3d at 1149.

The Court of Appeals for the Eleventh Circuit has held that in this Circuit the law can be "clearly established" for qualified immunity purposes, "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826-27 n. 4 (11 Cir. 1997) (en banc).

orders, see McCormick v. City of Fort Lauderdale, 333 F.3d 1234 1245, n.16 (11 Cir.2003); Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1287 (N.D.Ga. 1998)(finding use of pepper spray reasonable because it was of a use of force of "limited intrusiveness" designed to disable a suspect without causing permanent physical injury). It included the use of restraints to control the inmate/plaintiff inmate who clearly was causing a disturbance, and who based on the evidence represented a danger to others (Keating and Sansone) and perhaps to himself. See Williams v. Burton, 943 F.2d 1572, 1575-76 (11 Cir.1991)( *per curiam* )( the use of restraints is permitted to control inmates who are causing a disturbance, attempting to incite other prisoners, or who represent a danger to themselves or others). It also included throwing/taking the plaintiff to the ground/floor for the purpose of restraining and handcuffing him, Cf Durruthy v. Pastor 351 F.3d 1080, 1094 (11 Cir. 2003), and certainly included forcefully pulling on the plaintiff's arms once he was on the floor in order to bring them behind his back for handcuffing. As for all of these it is apparent that a reasonable officer, in the same situation as deputies Sansone and Keating, who clearly were acting in their discretionary capacities, could have believed that those uses of force which undisputedly were used on the plaintiff Underwood, were necessary and reasonable under the circumstances.

The plaintiff has also alleged that both deputies beat him repeatedly in the back and legs after he was lying on the floor with his right arm tucked under him, while they were attempting to handcuff him. The defendants' evidence is only that they wrestled with the plaintiff and had to violently tug at his right arm to get it free and put it behind his back. If the striking of the plaintiff did occur [for purposes of this motion -- taking the evidence in a light favorable to the plaintiff -- it will be assumed that this alleged striking of Underwood did occur], it is a closer question whether such force was necessary or unnecessary under the circumstances. The plaintiff has asserted that he was pinned down by Sansone's weight and could not present his right arm which was under him for handcuffing when commanded to do so.

It clearly cannot be said, however, that the alleged striking of Underwood in the side of the forehead or temple with a metal cannister [a potentially lethal use of force] in response to his having swung at and struck Keating on the neck and ear, was not excessive. There is no evidence that policies of the Sheriff's Office permit the striking of an inmate in the head with a metalic object. It also cannot be said that two other alleged uses of force, which the plaintiff contends were intentional and done for the purpose of inflicting pain (over-tightening his handcuff to the extent that it cut into his flesh and caused alleged nerve damage; and the leverage maneuver used to wrench his arms upward, while stating "I know how to make you cry like a Bitch...") were reasonable under the circumstances.

In a case in which excessive force is used, it is not necessary for officers to actually participate in its use in order to be held liable under §1983. Rather, they can be held liable for their nonfeasance if they are present at the scene and fail to take steps to protect a victim from a fellow officer's use of excessive force, and have a chance to intervene. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985), and cases cited therein.[6]

---

[6] In an excessive force case such as this one, in which more than one officer is being sued, the Courts have held that for an officer to be held liable on the theory that he failed to protect a plaintiff from the use of excessive force by another officer, he or she: (1) must have observed or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent the harm from occurring. Carr v. Tatangelo, 338 F.3d 1259, 1274, n.27 (11 Cir. 2003) (observing, with regard to defendant officer Mercer, that "it is not credible to event pustulate that he [Officer Mercer] had a reasonable opportunity to prevent the shooting," where Mercer did not see the "rapidly escalating" situation, and Mercer was some distance away when his fellow officer shot the plaintiff/appellant Carr); Riley v. Newton, 94 F.3d 632, 635 (11 Cir. 1996) (holding, with regard to officer Gisson who was sued on the ground that he failed to intervene to protect plaintiff Riley from another officer's [Newton's] use of excessive force, had no reason to suspect the use of excessive force until after it occurred, and the obligation for Gisson to take steps to protect the plaintiff never arose) (quoting O'Neill v. Kreminiski, 839 F.2d 9, 11-12 (2 Cir. 1988) for its holding that "The three blows were struck in such rapid succession that Conners had no realistic opportunity to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."); Turner v. Scott, 119 F.3d 425, 429 (6 Cir. 1997). Cf. Anderson v. Branen, 17 F.3d 552, 557 (2 Cir. 1994) (holding that in order for liability to attach there must have been a realistic opportunity to intervene to prevent

In this case, it appears from plaintiff Underwood's own allegations and trial testimony that Sansone's alleged use of the metal OC spray cannister to strike him in a single blow occurred quickly, that Sansone's co-worker Keating would have had no reasonable opportunity to intervene, and that Keating therefore could not be liable for failing to intervene to prevent that alleged abuse.

It does not appear that the same can be said with respect to the alleged over-tightening of the handcuffs and the alleged leverage maneuver which wrenched plaintiff's arms, allegedly causing him great pain. It appears that with regard to these things, there may have been an opportunity for Keating to intervene (e.g., by preventing the second tightening of the cuffs, or loosening them; and by intervening to prevent the leverage maneuver which Underwood has sworn was used to wrench his arms and cause him pain).

In sum, it is apparent that the defendant Deputies Sansone and Keating are entitled to qualified immunity with respect to the initial grasping and twisting of Underwood's arms in an attempt to apply handcuffs, the use of mace, throwing Underwood to the floor, and pulling on his arms once he was on the ground to get them behind his back for handcuffing. From the record, it is clear that these were all reasonable, and the minimum amount of force necessary under the circumstances, to control an inmate who had refused verbal orders and became violent when the defendants attempted to convince him to move from his cell and submit to being handcuffed. As for plaintiff's claims relating to those uses of force, the defendants' motion for summary judgment should be granted.

---

the harm; and that the question whether an officer had sufficient time to intervene or was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise) (citing O'Neill, supra, 839 F.2d at 11-12); Byrd v. Clark, 783 F.2 1002, 1007 (11 Cir. 1986)(vacating entry of summary judgment for a defendant officer, where there was evidence that the officer was present during the encounter in which the plaintiff was allegedly subjected to an unprovoked beating by another officer).

15

**CONCLUSION**

It is therefore recommended that the defendants' joint motion for summary judgment (DE# 32) be granted, in part, and denied, in part, as provided below.

As to Sansone, the defendants' motion should be denied on the claim that he struck the plaintiff in the side of the forehead or temple with a metal cannister. As to both Sansone and Keating, their motion should be denied on the claim that they both repeatedly beat plaintiff on the back and legs while he allegedly was on his stomach with one arm under his body and Sansone was allegedly pressing down on his body. As to Sansone, the defendants' motion should be denied on the claim that he intentionally inflicted pain by over-tightening the plaintiff's handcuffs after the restraints were in place on both wrists, and on the claim that he intentionally wrenched the plaintiff's cuffed arms for the purpose of inflicting pain; and as for those two alleged abuses the defendants' motion for summary judgment should be denied as to Keating, for his failure to intervene.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: May 23rd, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Daryl Underwood, <u>Pro Se</u>
      DC# K70825
      Washington Correctional Institution
      4455 Sam Mitchell Drive
      Chipley, FL 32428

      Adriana Mihaela Jisa, Esquire
      Purdy, Jolly, Giuffreda & Barranco, P.A.
      2455 E. Sunrise Boulevard, Suite 1216
      Fort Lauderdale, FL 33304